CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

10/9/2025
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JOHN SWAVELY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No.: __6:25CV00080__ |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

## Complaint

Comes now, John Swavely, by counsel, and files his Complaint against the United States of America.

### Parties and Jurisdiction

1. Mr. Swavely is a citizen of the Commonwealth of Virginia and he resides in Huddleston, Virginia.

2. Mr. Swavely timely and fully complied with the requirements of the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) (the "FTCA"), including, but not limited to, presenting an administrative claim in writing to the United States Department of Health and Human Services within two years after his claim accrued and receiving a September 30, 2025 denial letter from the agency.

3. The relevant acts and omissions occurred at the Johnson Health Center, a Federally Supported Health Centers Assistance Act (FSHCAA) deemed health center.

4. Pursuant to the FSHCAA, the Johnson Health Center's employees and certain individual contractors are deemed as employees of the Public Health Services and they are treated as Public Health Service employees for the purposes of medical malpractice liability coverage.

5. In this respect, the United States of America is legally responsible for the actions and inactions of the Johnson Health Center's employees and agents including Dr. Leonard Cohen and other providers identified in the Facts section below.

6. Jurisdiction is conferred on this Court by 28 U.S.C. § 1346(b).

7. Venue is proper pursuant to 28 U.S.C. § 1402(b).

8. Mr. Swavely certifies that he complied with Virginia Code § 8.01-20.1 prior to serving this lawsuit.

## Facts

9. On April 24, 2024, Mr. Swavely called the Johnson Health Center and requested a new anticoagulation medication because the cost of his current medication, Eliquis, significantly increased.

10. On April 24, 2024, Mr. Swavely spoke to Frieda Fitch, an employee of the Johnson Health Center.

11. Ms. Fitch transmitted an electronic message to Mr. Swavely's primary care provider, Dr. Leonard Cohen, regarding this request.

12. On April 29, 2024, Dr. Cohen responded: "NEEDS TO CHECK WITH PHYSICIAN WHO INITIALLY PRESCRIBED IT-CARDIOLOGIST?"

13. On April 30, 2024, Sherri Ferguson, a Johnson Health Center employee, communicated with Mr. Swavely.

14. After that communication, Ms. Ferguson documented the following in Mr. Swavely's chart:

> PT SAID HE DOES NOT SEE THAT CARDIOLOGIST ANY MORE.....HASNT FOR A WHILE NO....THAT IS WHO INITIALLY PRESCRIBED IT. (THAT CARDIOLOGIST WAS IN NJ WHEN HE LIVED THERE).

15. The medical records indicate that Dr. Cohen had been prescribing Mr. Swavely Eliquis since at least January 25, 2022.

16. Ultimately, on May 1, 2024, Dr. Cohen stated "[O]nly cheap one I know about is coumadin."

17. Subsequently, Ms. Ferguson responded within in Mr. Swavely's record:

> I DID LET HIM KNOW THAT THIS IS WHAT HE WILL PROBABLY END UP WITH UNLESS HE QUALIFIES FOR A SLIDING SCALE FEE.. IF POSSIBLE, GIVE HIM THE COUMADIN OR IF HE NEEDS TO COME IN FIRST LET ME KNOW . HE WILL BE WITH OUT A BLOOD THINNER TOMORROW.

18. Dr. Cohen ordered a prescription for coumadin and documented "gave him rx for 5mg but he should come in for pro time in one week."

19. Ms. Ferguson documented "PT NOTIFIED" in Mr. Swavely's medical record.

20. While Ms. Ferguson, a pharmacy technician, notified Mr. Swavely of the prescription, she did not instruct Mr. Swavely to come in to the office.

21. No one from Johnson Health Center, including Dr. Cohen, called Mr.

Swavely to make an appointment for his coagulation profile to be monitored.

22. Furthermore, Dr. Cohen did not have any conversations with Mr. Swavely regarding the risks, benefits, alternatives, side effects, or follow-up plan related to coumadin use.

23. On May 24, 2024, Mr. Swavely presented to Bedford Memorial Hospital with complaints of leg pain since 6 a.m.

24. There, he was diagnosed with a deep vein thrombosis via an ultrasound of his left leg.

25. Subsequently, Mr. Swavely was transferred to Lynchburg General Hospital.

26. At Lynchburg General, Mr. Swavely underwent a left femoral to popliteal bypass graft and profunda femoral artery open thrombectomy.

27. Ultimately, Mr. Swavely's leg was not salvageable, and he underwent an above-the-knee amputation.

28. Mr. Swavely's labs during this admission indicate that he was not therapeutically anticoagulated by coumadin.

## Malpractice

29. The United States of America is legally responsible for the actions and inactions of its employees and agents including, Dr. Leonard Cohen.

30. The United States of America and its employees and agents owed Mr. Swavely the duty to act as reasonably prudent healthcare providers in the same or related field of medicine would have acted under the same or similar circumstances.

4

31. The United States of America and its employees and agents committed malpractice by not acting as reasonably prudent healthcare providers in the same or related field of medicine would have acted under the same or similar circumstances in their care and treatment of Mr. Swavely's anticoagulation medication management and were a proximate cause of his past, present, and future harms and losses.

32. The United States of America and its employees and agents committed malpractice in their care and treatment of Mr. Swavely's anticoagulation medication management from at least May 1, 2024 through May 24, 2024. Such employees and agents include Dr. Cohen.

33. The acceptable standard of care required that the United States of America and its employees and agents to adequately consider Mr. Swavely's anticoagulation options; to adequately counsel Mr. Swavely on such options, to obtain informed consent for coumadin, which required adequately counseling regarding the risks, benefits, alternatives, and management plan of the medication; and to follow up with Mr. Swavely regarding the scheduling of follow-up appointments for the analysis of his coagulation profile. Such employees and agents include Dr. Cohen.

34. Defendant and its employees and agents breached their duties to Mr. Stewart and committed malpractice in the following respects:

   a. They did not adequately communicate with Mr. Swavely;
   b. They did not adequately consider the alternatives to prescribing Mr. Swavely coumadin;
   c. They did obtain informed consent by having sufficient communications regarding the risks, benefits, and management of coumadin;

    d. They did not schedule a follow-up appointment with Mr. Swavely to analyze his coagulation profile;
    e. They did not follow up with Mr. Swavely regarding the scheduling of a follow-up appointment;
    f. Overall, their care and treatment of Mr. Swavely deviated from the standard of care when they knew, or should have known, that such substandard care and treatment would cause or likely would cause serious injury to Mr. Swavely.

35. As a result of the malpractice of the employees and agents at the Johnson Health Center, Mr. Swavely formed a deep vein thrombosis in his left lower extremity, underwent surgery to remove the thrombus, and underwent an above the knee amputation; Mr. Swavely has been disfigured; Mr. Swavely has had to undergo extensive medical treatment, surgical treatment, physical therapy, and rehabilitative efforts and has had to be fitted with a prosthesis, and he will require additional medical treatment, rehabilitative efforts, and prostheses in the future; Mr. Stewart has suffered permanent and severe physical injuries; Mr. Swavely has suffered and will suffer great emotional distress; Mr. Swavely has suffered and will suffer tremendous pain; Mr. Swavely has suffered and will suffer inconvenience, embarrassment, and humiliation; Mr. Swavely has incurred and will incur substantial medical expenses; Mr. Swavely has incurred and will incur financial loss; and Mr. Swavely has incurred and will incur decreased enjoyment of life and loss of his independence.

36. Had the United States of America and its employees and agents had complied with the standard of care, Mr. Swavely would have avoided all of his past, present, and future injuries and damages, and his outcome.

37. Mr. Swavely seeks to be fairly compensated to the fullest extent

permitted under the law for his harms and losses occasioned by the malpractice of the employees and agents of the United States of America.

WHEREFORE, the Plaintiff moves this Court for judgment against the Defendant in the amount of TWO MILLION SIX HUNDRED THOUSAND DOLLARS ($2,600,000.00) plus his taxable costs with pre- and post-judgment interest.

JOHN SWAVELY

By: __/s/   Anthony M. Segura__
Counsel

Anthony M. Segura (VSB No. 79040)
Correy A. Diviney (VSB No. 74833)
STRICKLAND, DIVINEY & SEGURA
23 Franklin Rd. SW
Roanoke, Virginia 24011
Telephone: (540) 982-7787
Fax: (540) 342-2909
Email: anthony@stricklandattorneys.com

*Counsel for Plaintiff*